FILED

FEB 2 6 2007

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF CALIFORNIA

*POSTED ON WEBSITE*
*NOT FOR PUBLICATION*

### UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF CALIFORNIA

In re:                              )     Case No. 06-90559-D-7
                                    )     Docket Control No. UST-2
FRANKLIN VARTAN &                   )
NADIA VARTAN,                       )
                                    )     Date:  January 24, 2007
                    Debtors.        )     Time:  10:30 a.m.
_____)     Dept:  D

### MEMORANDUM DECISION

**This memorandum decision is not approved for publication and may not be cited except when relevant under the doctrine of law of the case or the rules of claim preclusion or issue preclusion.**

The United States Trustee for the Eastern District of California ("UST") has moved to dismiss the above-captioned case of Franklin and Nadia Vartan ("the Debtors") under 11 U.S.C. § 707(b)(1) and (2) as an abuse of the provisions of chapter 7 of the Bankruptcy Code.[1]  For the reasons set forth below, the court will deny the UST's motion.

### I. BACKGROUND

On September 25, 2006, the Debtors filed a joint chapter 7 petition.  On the Voluntary Petition, the Debtors state that they are individuals with consumer/non-business debts.

On November 9, 2006, the UST filed a Statement of Presumed Abuse in the Debtors' case.  In the Statement, the UST advised that it had determined the Debtors' case to be presumptively an

---

1.  Unless otherwise indicated, hereinafter all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, as enacted after Oct. 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8 (Apr. 20, 2005), 119 Stat. 23 (2005).

abuse under § 707(b).

On December 11, 2006, the UST filed its Motion to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(1), Under 11 U.S.C. § 707(b)(2) (the "Motion"), along with a supporting declaration and notice of hearing.  The Motion was timely filed under Federal Rule of Bankruptcy Procedure ("Rule") 1017(e)(1), which provides that a motion to dismiss a case under § 707(b) must be filed within sixty days of the date first set for the Meeting of Creditors.[2]

The UST brought the Motion solely on the basis that the presumption of § 707(b)(2) is tripped in this case; the UST did not seek relief under § 707(b)(3).[3]  In the Motion, the UST requests an order dismissing the Debtors' case because, it argues, relief in favor of the Debtors is an abuse of the provisions of chapter 7.  The UST asserts that properly-taken deductions from the Debtors' current monthly income are insufficient under the formula set forth in § 707(b)(2)(A) to avoid a finding of presumptive abuse in the Debtors' case, and that the Debtors have failed to rebut that presumption.

On January 10, 2007, the Debtors filed opposition to the

---

2.   In addition, § 704(b)(2) provides that where the UST has filed a Statement of Presumed Abuse, it is to file a motion to dismiss the case, or a statement as to why such a motion is not considered appropriate, not later than 30 days after the statement was filed. In this case, the Motion was also timely pursuant to § 704(b)(2), having been filed within the 30-day period as extended by operation of Rule 9006(a).

3.   This latter subsection provides that in a case in which the presumption does not arise or is rebutted, the court is to consider whether the petition was filed in bad faith or whether the totality of the circumstances of the debtor's financial situation demonstrates abuse.   The UST made no such argument in this case.

Motion, along with two declarations in support thereof.  The Debtors argue that all deductions claimed, including deductions for certain payments on obligations secured by property to be surrendered by the Debtors, are proper under the formula in § 707(b)(2)(A).

This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), in which the court may make its own findings of fact and conclusions of law.  This memorandum decision constitutes the court's findings of fact and conclusions of law under Federal Rule of Civil Procedure 52, as incorporated by Federal Rule of Bankruptcy Procedure 7052.

## II. FACTS

The material facts are not in dispute.  On September 25, 2006, the Debtors, under penalty of perjury, filed their schedules and Statement of Financial Affairs.  On their A-schedule, the Debtors identify a residential real property in Turlock, California (the "Residence") that is valued at $460,000.  On their D-schedule, they disclose a first deed of trust against the Residence in favor of Washington Mutual Home Loans ("WMHL") and a second deed of trust against the Residence in favor of Citimortage ("Citi"), along with respective obligations to these creditors of $346,000 and $148,000.

On their B-schedule, the Debtors identify four motor vehicles, among them a 2005 Toyota Tundra (the "Toyota") and a 2006 Honda Pilot EX with 10,000 miles (the "Honda").  Both the Toyota and the Honda are identified on the B-schedule as "leased" vehicles, and executory lease contracts with, respectively, Toyota Financial Services ("TFS") and America Honda Financing

("AHF") are identified on the Debtors' G-schedule.

On their Chapter 7 Individual Debtor's Statement of Intention filed September 25, 2006, the Debtors indicate their intent to surrender the Residence, the Toyota, and the Honda. Such surrender would leave the Debtors post-petition with two vehicles, both of which are also identified on the Debtors' B-schedule as "leased."

On September 25, 2006, the Debtors also filed their Statement of Current Monthly Income and Means Test Calculation ("Form B22A"). On line 42 of Form B22A, the Debtors include, as deductions from current monthly income ("CMI"),[4] future average monthly payments on obligations secured by the Residence (the obligations to WMHL and Citi), the Honda (the obligation to AHF), and the Toyota (the obligation to TFS). These monthly payments total $4,335.21. With these and other deductions set forth in their Form B22A, the Debtors calculate, at line 50, their Monthly Disposable Income ("MDI") to be <$2,646.03>.

As discussed in some detail below, the MDI as calculated in the Debtors' Form B22A does not create a presumption of abuse under 11 U.S.C. § 707(b)(2). The UST argues, however, that the future monthly payments on the Residence, the Toyota, and the Honda are not properly deducted from the Debtors' CMI for purposes of determining whether a § 707(b)(2) presumption of abuse exists in the Debtors' case. If such deductions were to be disallowed, the Debtors' CMI would be such that chapter 7 relief in favor of the Debtors would be presumptively an abuse as set

---

4.   "Current monthly income" is defined in § 101(10A), but is actually based on past, not current income.

- 4 -

1  forth in § 707(b)(2).[5]

2                          III. ANALYSIS

3       As noted above, the Debtors are individuals, and their

4  Voluntary Petition indicates that their obligations are

5  consumer/non-business debts.  Section 707(b)(1) provides that

6  such cases may be dismissed where the court finds that chapter 7

7  relief would be an abuse.

8       The presumption of abuse as provided by § 707(b)(2) is not

9  available where the debtor's and debtor's non-separated spouse's

10 CMI, multiplied by twelve, is equal to or less than the

11 applicable state median family income for a household of

12 comparable size.  See 11 U.S.C. § 707(b)(7) (denying standing to

13 file motion).  In this case, the Debtors' CMI, multiplied by

14 twelve, exceeds the California median family income.  See

15 Debtors' Form B22A, lines 12-15.  The Debtors' case is thus

16 subject to § 707(b)(2).

17      Section 707(b)(2) sets forth an extensive formula which is

18 to be used to determine whether a presumption of such abuse

19 arises.  Where a debtor's MDI is less than $100 (i.e. yields less

20 than $6,000 to fund a 60-month plan), the case is not presumed

21 abusive; the case is presumed abusive, however, where MDI is

22 either more than $166.67 (i.e. yields $10,000 to fund a 60-

23 month plan) or where MDI is between $100 and $166.67 and the applicable

24 amount, multiplied by 60, would pay at least twenty-five percent

25

26      5.  Although the UST alleges that the Debtors' Form B22A includes
27 other entries that are not proper or otherwise require adjustment, the
   deductions from income in regard to the Residence, the Toyota, and the
28 Honda, in and of themselves, are determinative as to a finding of
   abuse under 11 U.S.C. § 707(b)(2).

of the debtor's non-priority unsecured debts.

The UST does not dispute the accuracy of the figures set forth in the Debtors' Form B22A.  At the hearing, the UST acknowledged that such figures, like figures in a debtor's bankruptcy schedules, are determined as of the date the Debtors filed their chapter 7 petition.  The issue, then, is whether the language of § 707(b)(2) permits a debtor, where he or she will surrender property, to deduct the average contractual monthly payment on such property from his or her CMI, to calculate his or her MDI.  As noted above, should the Debtors be unable to deduct such monthly payments on the Residence, the Toyota, and the Honda, then the formula in § 707(b)(2) would yield a figure that creates a presumption of abuse.  If the Debtors are able to deduct the payments, then the resulting figure for MDI does not create a presumption of abuse.

Under § 707(b)(2)(A), a debtor is to deduct from CMI those expenses that are enumerated in clauses (ii), (iii), and (iv).  11 U.S.C. § 707(b)(2)(A)(i).  Clause (iii) includes "average monthly payments on account of secured debts," which payments:

> shall be calculated as the sum of --
>
> (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition; and
>
> (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor. . . ;
>
> divided by 60.

11 U.S.C. § 707(b)(2)(A)(iii).

The language in section 707(b)(2)(A)(iii)(I) (hereinafter,

"Subclause (I)") is at issue in this case.

"The starting point for interpreting a statute is the language of the statute itself." <u>Consumer Prod. Safety Comm'n v. GTE Sylvania, Inc.,</u> 447 U.S. 102, 108 (1980). The Supreme Court has instructed that the "plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of the statute will produce a result demonstrably at odds with the intentions of its drafters'." <u>United States v. Ron Pair Enters., Inc.,</u> 489 U.S. 235, 242 (1989) (citations omitted). Where "plain meaning" yields results that are not absurd, the inquiry ends there, without need to probe legislative history. <u>See Lamie v. U.S. Trustee,</u> 540 U.S. 526, 534-36 (2004) ("awkward, and even ungrammatical" language in 11 U.S.C. § 330(a)(1) not ambiguous, and plain meaning of words applied).

The court finds the language of Subclause (I), although awkward, to be clear. There are no internal inconsistencies, ambiguities, or words of unclear meaning. Because the language is clear, the court is to conclude that the language "expresses Congress' intent," and the court is to end the inquiry, rather than resort to legislative history to determine Congressional intent. <u>United States v. Ron Pair Enters., Inc.,</u> <u>supra</u>, 489 U.S. at 241. The UST agrees with this general principle, and rightly notes that all words and phrases of the statute must be considered. Motion at 6-7.

The UST argues, however, that the phrase "payments contractually due in each month of the 60 months following the date of the petition" excludes payments on obligations secured by surrendered property because of the effect of the word "due."

- 7 -

The UST argues that where a debtor will surrender collateral or

leased property and obtain a chapter 7 discharge, the contract

payments do not come "due," and therefore such payments are

properly not part of the formula.  But such an interpretation

does not take into account the nature of a bankruptcy discharge.

A discharge does not cause payments under a contract to cease

being due.  Instead, it creates an injunction against attempts to

collect or recover the debt.  11 U.S.C. § 524(a)(2).

The UST's interpretation also ignores the fact, acknowledged

by the UST during oral argument, that debtors must fill out their

Form B22A, like their schedules, to reflect their economic

situation as of the petition date.  Whether or not the debtor in

fact surrenders leased property or collateral post-petition, it

remains that as of the petition date, the relevant contracts call

for payments to be made post-petition.  Subclause I clearly

requires consideration of "amounts scheduled as contractually due

in each month of the 60 months" following the petition date.  If,

as of the petition date, payments are in fact scheduled in the

contract, the language of Subclause I requires that up to sixty

such payments be included in the formula.

The language of Subclause I is clear.  It does not state

that the debtor shall exclude amounts scheduled as due in cases

where the property is to be surrendered, or make any reference to

statements by the debtor as to his intentions to retain or

surrender the property.  The statute states simply that the

amounts scheduled as due under the contract for sixty months

following the petition date are relevant to the formula.  If

Congress had wanted to omit payments on secured debt where

- 8 -

1  collateral is to be surrendered, it could have very easily so

2  stated.

3      The UST also, despite the clarity of the statutory language,

4  asks the court to look to the legislative history of BAPCPA to

5  interpret Subclause I.  The UST argues that Congress intended to

6  exclude from Subclause I those monthly payments that a debtor

7  would not make due to an upcoming surrender of the property,

8  generally because the structure and effect of BAPCPA is intended

9  to cause "can-pay" debtors to do so.  But, even if the court were

10 persuaded that a resort to Congressional intent were appropriate,

11 it would conclude that the legislative history supports a strict,

12 mechanical reading of the formula in § 707(b)(2) in general, and

13 Subclause I specifically.  As noted by one bankruptcy court,

14 "[t]o the extent it is discernable, Congress' intent in enacting

15 the Means Test [of § 707(b)(2)] was to create a 'mechanical'

16 formula for presuming abuse of Chapter 7."  In re Randle, 2006 WL

17 3734351 *3 (Bankr. N.D. Ill. 2006).  Citing limited legislative

18 history, the Randle court notes that this mechanical approach,

19 which avoids "reliance on individualized information as much as

20 possible," is reflected throughout § 707(b)(2) through the use of

21 objective, standardized tests that eliminate flexibility and

22 limit judicial discretion.  Id., citing among others, Susan

23 Jensen, A Legislative History of the Bankruptcy Abuse Prevention

24 and Consumer Protection Act of 2005, 79 Am. Bankr. L.J. 485

25 (2005).  A strict, mechanical reading of section 707(b)(2)

26 requires that the monthly payments in question be included in the

27 formula.

28      The court therefore concludes that Subclause I requires that

- 9 -

the Debtors include in their Form B22A the expenses consisting of
the monthly payments on the Residence, the Honda, and the Toyota
that were, as of the petition date, scheduled as contractually
due to secured creditors in each month of the 60 months following
the date of the petition.

### III. CONCLUSION

The UST did not request relief under § 707(b)(3), by
introducing specific evidence that the Debtors filed their
petition in bad faith or that the totality of circumstances
demonstrate the Debtors' bad faith; instead, the UST sought
relief solely under § 707(b)(2).  Because the presumption of
abuse does not arise in this case under § 707(b)(2), the Motion
will be denied.  The court will issue an order consistent with
this memorandum.

Dated:  February 26 2007

*Robert Bardwil*

ROBERT S. BARDWIL
United States Bankruptcy Judge

- 10 -

# CERTIFICATE OF MAILING

I, Andrea Lovgren, in the performance of my duties as Deputy Clerk to the Honorable Robert S. Bardwil, mailed by ordinary mail a true copy of the attached document on today's date to each of the parties listed below:

Office of the US Trustee
501 "I" Street, 7th Floor
Sacramento, CA 95814

Gary Farrar
P.O. Box 576097
Modesto, CA 95357

Randall Walton
P.O. Box 830
Modesto, CA 95353-0830

Franklin & Nadia Vartan
914 Woodland Dr.
Turlock, CA 95382

DATE: February 26, 2007

Deputy Clerk